United States District Court
For the Eastern District of Wisconsin

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2017 AUG 14 P 1: 28

STEPHEN C. DRIES
CLERK

Jamie Bowens,

    Plaintiff,

v.                                     Case No. _____

Belinda Schrubbe, Nurse C. Messerole,        17-C-1124
Ann Larson, RN, Jeffrey Manlove, MD, et. al.,

    Defendants.

---

**Complaint Under the Civil Rights Act of 42 U.S.C. 1983**

---

**Complaint with Jury Demand**

    This is a civil rights action filed by Jamie Bowens (Bowens), a state prisoner, under Title 42 of the United States Code 1983, alleging the denial of medical care in violation of the 8th Amendment to the United States Constitution, and constitution of the state of Wisconsin, brought to redress the violation of the plaintiff's right guaranteed to him by the Constitution of the United States.

    The actions of each defendant, who are employees of the Wisconsin Department of Corrections (WDOC), displayed deliberate indifference to the plaintiff's constitutionally protected right in violation of the 8th Amendment and Wisconsin's negligence law, primarily by delaying or denying adequate medical care to Bowens' torn Achilles tendon.

**Jurisdiction**

1)     Jurisdiction over subject matter of this action is conferred by 28 U.S.C. 1331(1), federal question jurisdiction, 1243(a)(3) (42 U.S.C. 1983 jurisdiction), and 28 U.S.C.

- 1 -

1367(a), giving this court supplemental jurisdiction over plaintiff's negligence state law tort claim.

2) Venue is properly laid in the Eastern District of Wisconsin because the wrongful acts complained of herein took place in Dodge County, within the Eastern District of Wisconsin, within the meaning of 28 U.S.C. 1391(b).

**Parties**

3) The plaintiff, Bowens, was incarcerated at Waupun Correctional Institution (WCI), during the events described in the complaint.

4) The defendant, Belinda Schrubbe, is employed as the HSU manager at WCI. Schrubbe is responsible for supervising all medical and health care staff within HSU, and was made aware of Bowens' torn Achilles injury.

5) The defendant, Nurse C. Messerole, RN, is an adult female citizen of the United States, currently a resident of Wisconsin, and at all times material hereto was employed as a nurse at WCI. Nurse Messerole is responsible for medical and health care within the institution, and was made aware of Bowens' torn Achilles injury.

6) The defendant, Ann Larson, RN, is an adult female citizen of the United States, currently a resident of Wisconsin, and at all times material hereto was employed as a nurse at WCI. Nurse Larson is responsible for medical and health care within the institution, and was made aware of Bowens' torn Achilles injury.

7) The defendant, De Young, is an adult female citizen of the United States, currently a resident of Wisconsin, and at all times material hereto was employed as a nurse at WCI. De Young is responsible for medical and health care within the institution, and was made aware of Bowens' torn Achilles injury.

8) The defendant, Dr. Jeffrey Manlove, MD, is employed as the physician/doctor within HSU at WCI. Dr. Manlove is responsible for the overall health care and medical treatment of inmates housed at WCI. Dr. Manlove was made aware of Bowens' torn Achilles injury.

## Statement of Facts in Support of Medical Claim

9) Bowens' principal claims against the defendants are that they acted with deliberate indifference to Bowens' torn Achilles injury when they failed to immobilize his ruptured Achilles injury for four (4) weeks, delayed Bowens' appointment with a specialist, and delayed/denied him surgery to repair the injury before it was too late to repair.

10) Bowens suffered a debilitating rupture to his Achilles tendon which caused him extreme pain, impeded his mobility over the course of the four (4) weeks it went untreated, and subsequently left him with a lifelong injury.

11) Bowens missed a step while walking up the stairs during the week of September 19, 2013 thru September 26, 2013. In missing the stair, Bowens landed hard on his heel sustaining an injury to his right leg. Bowens heard an audible "pop" and felt excruciating pain and weakness in his right Achilles.

12) When he was seen by Nurse De Young, Bowens informed her that he heard a loud "pop" and felt excruciating pain and weakness in his right foot.

13) De Young's preliminary diagnosis was a right Achilles injury with swelling. De Young's gave Bowens an Ace bandage, ice, crutches, and placed him on a no-work restriction to deal with his excruciating pain.

14) However, De Young failed to follow the specific standard protocol for patients with a ruptured Achilles tendon which includes: a) immobilizing Bowens' injured foot by

providing a cast, splint, boot, or any device that would place the injury in a non-weight bearing status; and b) order that his meals be sent to the unit so that Bowens would not have to use crutches to walk to and from the chow hall to eat.

15) On September 30, 2013, Bowens was seen by Nurse Messerole who diagnosed him with a torn/ruptured Achilles tendon.

16) Nurse Messerole acknowledged that Bowens had 0 RT Reflex Achilles swelling from ankle to mid-calf, that he was using crutches, and was in pain.

17) Nurse Messerole placed Bowens on work restriction, ordered meals on the unit, ice, and crutches. Messerole also ordered a Class II MRI, MD consult, and a MD post operation.

18) However, Messerole failed to follow specific standard protocol for patients with a ruptured Achilles injury. Messerole failed to provide Bowens with a cast, splint, boot, or any other device for non-weight bearing status or immobilize the injury.

19) Bowens had an MRI on October 2, 2013. Although the results were completed on that date, neither Dr. Manlove nor Nurses Larson, De Young or Messerole reviewed the results until October 13, 2013.

20) Bowens contacted HSU about the results of the MRI between October 10 and 12.

21) On or around October 13, 2013, Bowens was called regarding his request about the MRI. Bowens was still using crutches to get around although he was in excruciating pain.

22) Bowens informed the nurse that he was suffering pain from an Achilles injury, that he had a MRI performed on October 2, 2013, was awaiting the results of the MRI.

23) The nurses informed Bowens that it usually takes 3-5 days for MRI results to come back and HSU may not have received his results yet.

- 4 -

Case 2:17-cv-01124-WCG   Filed 08/14/17   Page 4 of 10   Document 1

24) Bowens informed the nurses that it had been 11 days since he had the MRI, and the nurses went to check the file and found that the results were on file.

25) The nurses then rushed to show Dr. Manlove the MRI results. After reviewing the MRI, Dr. Manlove informed Bowens that he was scheduling an immediate orthopedic assessment, and that more likely than not, Bowens was going to need surgery to repair the ruptured Achilles tendon. Because the MRI was not reviewed by the nurses and Dr. Manlove in a timely manner, Bowens' appointment with the specialist to repair the tendon was delayed.

26) Bowens was initially diagnosed with a torn Achilles on September 30, 2013; however, Dr. Manlove failed to comply with specific treatment protocol for a patient with a ruptured Achilles tendon.

27) In the time from the initial diagnoses on September 30, 2013, and when Bowens was seen by the orthopedic specialist on October 22, 2013, Dr. Manlove failed to provide Bowens with a cast, splint, boot, or any other device that would immobilize his foot injury.

28) Moreover, after reviewing the MRI on October 13, 2013, and knowing the extent of Bowens' injury, Dr. Manlove failed to provide Bowens with a cast, splint, boot, or any other device that would immobilize his Achilles injury until he could be seen by the orthopedic specialist on October 22, 2013.

29) On October 22, 2013, after reviewing the MRI results, the orthopedic specialist informed Bowens that he needed immediate surgery to repair the ruptured Achilles tendon.

30) During the consultation the orthopedic specialist asked Bowens how he sustained his injury and how long it had been since he had injured himself.

- 5 -

31) Bowens informed the orthopedic specialist that it had been about 4-5 weeks, to which she replied that it was too late to do surgery.

32) The orthopedic specialist informed Bowens that when a ruptured Achilles is not repaired immediately after the injury, it begins to callous over the heel, and at that point it is too late to correct it through surgery.

33) The orthopedic specialist further informed Bowens that it is standard practice and protocol to perform surgery on a patient with his type of injury within 2 weeks of sustaining the injury, that his surgery should have been scheduled immediately following the MRI results, and that his surgery should have happened no later than October 10, 2013.

34) The orthopedic specialist also informed Bowens that because Dr. Manlove and the HSU staff failed to properly treat his injury by immobilizing it with a cast, splint, boot, or any other device, waited too long to review the MRI results, and delayed in scheduling him to be seen by an orthopedic specialist, too much time had elapsed to perform surgery.

35) The orthopedic specialist went on to inform Bowens that there was nothing that could be done to rectify or correct the injury because Dr. Manlove and the WCI nursing staff did not properly treat his ruptured Achilles tendon.

36) The orthopedic specialist also informed Bowens that he would suffer lifelong complications from his injury which would include a loss of muscle mass, a loss in range of motion, a permanent limp in his gait, as well as stiffness and pain in his foot.

37) The orthopedic specialist informed Bowens that the only non-surgical option would have been a boot, but that option was off the table because too much time had elapsed for that to be effective in treating his injury.

38) Bowens is suffering from a permanent limp in his gait and is forced to wear an AFO brace for the rest of his life.

39) Bowens' limp causes a lack of balance, as well as constant lower back pain due to WCI staff's failure to properly treat his ruptured Achilles injury.

## Legal Theory or Appropriate Authority

An Achilles tendon rupture is a tear in the tendon which impedes the ability of the foot to point downward causing pain and limiting mobility. Walking around on a ruptured tendon exacerbates the injury, increasing the gap between the torn edges of a tendon because of the way that muscles contract in the foot and calf.

Immobilizing the injured foot prevents stretching of the tear and allows the torn edges of the tendon to sit together and scar tissue begins to form, rejoining the edges. When an Achilles rupture is not immobilized, the torn tendon edges stretch apart when the foot strikes the ground causing severe pain and weakness.

The nurses that initially saw Bowens regarding his ruptured Achilles tendon failed to provide him the proper treatment when first notified of the injury. The proper course of treatment was to immobilize the foot with a cast, splint, boot, or any other device that would insure that his foot was in non-weight bearing status.

Although Bowens was given crutches, they did not serve the same purpose that a boot would have served. Bowens was ultimately given a boot about 4-5 weeks after his injury but the delay had a detrimental effect on his condition, causing him to suffer excruciating pain which indicates that gapping at the rupture site had occurred due to the lack of immobilization.

Bowens' 8th Amendment claims involve being denied or delayed medical treatment. Prison officials violate the 8th Amendment's proscription against cruel and unusual punishment if

they display deliberate indifference to an inmate's serious medical needs. Deliberate indifference to serious medical needs of a prison constitutes the unnecessary and wanton infliction of pain. See, *Greeno v. Daley*, 414 F. 3d 645, 652-53 (7th Cir. 2005), quoting *Estelle v. Gamble*, 429 U.S. 97 (1976).

To prevail on such an 8th Amendment claim, a prisoner must show: 1) that he had an objectively serious medical need; and 2) that the official knew that the medical need was serious but disregarded it. An objectively serious injury or medical need is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even lay person would easily recognize the necessity for a doctor's attention. See, *Johnson v. Snyder*, 444 F. 3d 579, 584-85 (7th Cir. 2006).

An objectively serious medical condition need not be life threatening… Rather it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. See, *Gayton v. McCoy*, 593 F. 3d 610, 620 (7th Cir. 2010).

Courts that have considered a condition similar to that sustained by the plaintiff have usually found that it satisfies the objectively serious prong. See, *Turner v. Kirsch*, No. 08-2005, 2011 U.S. Dist. Lexis 40517, 2011 WL 1430300 (E.D. PA 2011) (a torn Achilles tendon requiring treatment and … surgeries considered a serious medical condition); see also, *Hemmings v. Gorczyk*, 134 F. 3d 104, 109 (2nd Cir. 1998); *Allen v. Feinerman*, 2009 U.S. Dist. Lexis 63760, 2009 WL 90118 (holding that allegations of a ruptured Achilles tendon were sufficient to state a serious medical need); *Petties v. Carter*, 836 F. 3d 722 (7th Cir. 2016) (holding an Achilles tendon rupture is an objectively serious condition); and, *Hampton v. Hart*, 2011 U.S. Dist. Lexis 77424 (holding defendants did not argue that plaintiff's ruptured Achilles was not an objectively serious medical condition).

- 8 -

Case 2:17-cv-01124-WCG    Filed 08/14/17    Page 8 of 10    Document 1

To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind. The Supreme Court has instructed us that a plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm. See, *Petties v. Carter*, 836 F. 3d 722, 728.

The inquiry starts by examining existing precedent. We look at the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs. Id. at 729.

In the medical context, obviousness of a risk can be obscured by the need for specialized expertise to understand the various implications of a particular course of treatment. Courts have found that where unnecessary risk may be imperceptible to a lay person, that a medical professional's treatment decision must be such a substantial departure from accepted professional judgment, practice, or stands as to demonstrate that the person responsible did not base the decision on judgment.

A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment; that is, no minimally competent professional would have so responded under those circumstances. Another is when he or she fails to follow an existing protocol. While published requirements for health care do not create constitutional rights, such protocols certainly provide circumstantial evidence that prison health care gatekeepers knew of a substantial risk of serious harm.

The facts lead to a reasonable inference that there was circumstantial evidence that the defendants knew that failure to immobilize an Achilles rupture would impede Bowens' recovery and prolong his pain. Bowens also alleges a negligence claim against the defendants.

## Exhaustion of Administrative Remedies

Bowens has exhausted his administrative remedies under the Department of Corrections' grievance procedures outlined in DOC 301.05 with respect to all claims against defendants who represent nurses, doctors, and HSU staff. See, Complaint #WCI-2013-21379.

## Requested Relief

Wherefore, Bowens respectfully requests that this court grant a trial by jury of all issues triable of right to a jury in this action.

Bowens seeks damages in the amount of $500,000.00 – five hundred thousand dollars – because of the acts and omissions of the defendants who caused Bowens to suffer unnecessary pain and emotional distress. Bowens further requests that the monetary damages be compensatory and punitive.

The notice of claim has been filed in this matter as of March 12, 2014.

I declare under penalty of perjury that the foregoing complaint is true and correct. The plaintiff, Jamie Bowens, declares that the statements are accurate pursuant to 28 U.S.C. 1746.

Respectfully submitted,

*Jamie Bowens*
Jamie Bowens